# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**TINA DEPREZ**
    Plaintiff,

v.                Case No. 10C0294

**JOURNAL SENTINEL INC.,**
    Defendant.

## DECISION AND ORDER

Plaintiff, Tina Deprez, a former employee of defendant, Journal Sentinel, Inc., alleges that defendant violated Title VII of the Civil Rights Act of 1964 by terminating her based on gender and in retaliation for complaining about gender discrimination in connection with her compensation. Plaintiff also alleges that defendant violated the Equal Pay Act of 1963. Before me now is defendant's motion for summary judgment.[1]

## I. BACKGROUND

Defendant employed plaintiff as an online automotive salesperson. Like many newspapers, in recent years defendant faced serious revenue problems and in 2008 initiated a reduction in force ("RIF") terminating 150 employees. In addition, in late 2008, defendant's online automotive sales partner, Cars.com, terminated defendant's services costing defendant some $600,000. As a result, in early 2009 defendant initiated another RIF. On March 2, 2009, Ms. Jandell Herum, defendant's director of online sales, provided

---

[1] I will deny defendant's request to strike a significant portion of plaintiff's proposed findings of fact. Motions to strike are disfavored and reserved for egregious rule violations which are not present here.

defendant's human resources department with a list of 40 employees (including plaintiff) who were to be terminated in April. On April 6, 2009 defendant terminated plaintiff and all of the other employees on Herum's list except one. Later in 2009, as part of its RIF defendant terminated 160 additional employees.

As part of the restructuring which accompanied the RIF, defendant eliminated the position of online automotive sales manager held by Mike Bortolotti. Defendant placed Bortolotti in the lesser position of online automotive salesperson and reduced his compensation from a base salary of $78,000 and a target commission of $31,000 to a base salary of $45,000 and a target commission of $45,000. In 2008, plaintiff's base salary was $24,000 and her target commission was $61,000. In 2008, defendant also employed Mike Wilke as an online automotive salesperson. In 2008, Wilke's base salary was $24,000 and his target commission was $34,000.

Before terminating plaintiff, Herum determined that online sales revenue had fallen so much that defendant could no longer afford three online automotive salespersons. Herum states that although all three online salespersons were performing adequately in terms of first quarter 2009 sales, she decided to terminate plaintiff because of several performance-related issues. First, in November 2008 Herum directed plaintiff to provide credit to International Auto, a large customer, for ads that did not run, but plaintiff failed to do so. Second, International Auto's ad agency complained about plaintiff's delay in sending documentation of ads to two car manufacturers. Third, another large customer, Wilde Automotive, asked that plaintiff be removed from its account because of her poor service, and fourth, plaintiff's supervisor concluded that plaintiff was insufficiently cooperative with print account executives.

2

In the first quarter of 2009, in the aftermath of losing Cars.com, defendant temporarily established a compensation structure which focused on retaining accounts from Cars.com and transferring them to defendant's new online automotive sales partner, CarSoup. And beginning on April 1, 2009, defendant installed a new compensation package which maintained the same base salaries as in 2008 but set up a uniform commission of 8.5% of net sales revenue. Plaintiff complained about the new plan to automotive department sales manager Jeff Kuether. Kuether stated that the plan was a response to the current economic conditions. On April 2, 2009, plaintiff complained about the plan to a human resources department representative.

I will cite additional facts in the course of the decision.

## II. DISCUSSION

I may grant defendant's summary judgment motion only if, taking all the facts and reasonable inferences therefrom in the light most favorable to plaintiff, I conclude that no reasonable juror could find for plaintiff. See, e.g., Carlisle v. Deere & Co., 576 F.3d 649, 653 (7th Cir. 2009). I begin the analysis by discussing plaintiff's Equal Pay Act claim. Plaintiff's complaint seems to be twofold: first, that defendant paid Bortolotti a higher base salary as a salesperson than it paid her; second, that the new compensation structure adversely affected her more than her male co-workers. To prevail on an Equal Pay Act claim, plaintiff must first establish a prima facie case by showing that: (1) defendant paid different wages to a male employee than to her; (2) for equal work requiring substantially similar skill, effort and responsibilities; and (3) the work was performed under similar working conditions. Cullen v. Indiana Univ. Bd. of Trs., 338 F.3d 693, 698-99 (7th Cir. 2003). If plaintiff establishes a prima facie case, defendant must show that the pay

3

disparity was due to: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) another factor other than gender. 29 U.S.C. § 206(d)(1)(i)-(iv); Fallon v. Illinois, 882 F.2d 1206, 1211 (7th Cir. 1989).

As to her claim that defendant paid Bortolotti more than it did her for equal work, plaintiff establishes a prima facie case. Defendant contends that Bortolotti's job was substantially different, but a reasonable juror could conclude that plaintiff's job and Bortolotti's included a "common core" of duties. Cullen, 338 F.3d at 698. Thus, defendant must present a justification for the pay differential. The justification need not be a good reason, make economic sense or serve a legitimate business purpose, so long as it is gender-neutral, bona fide and applied in good faith. Wernsing v. Department of Human Servs., 427 F.3d 466, 468 (7th Cir. 2005); Fallon, 882 F.2d at 1211. Defendant proceeds under the so called catch-all provision, arguing that the pay differential was based on a factor other than gender – namely Bortolotti's prior experience as a manager (both with defendant and with prior employers). Defendant points out that when Herum set Bortolotti's base salary after reassigning him, she took into account his prior managerial position and higher salary and that because of his prior position, she also assigned him several additional responsibilities such as researching third-party vendors and assisting Kuether in transitioning into a new position. This explanation is sufficient to carry defendant's burden. See Merillat v. Metal Spinners, Inc., 470 F.3d 685, 697 (7th Cir. 2006) (stating that paying an employee based on experience and other qualifications is reliance on a factor other than gender); see also 29 C.F.R. § 1620.26(a), (b) (discussing practice of "red circling" which involves paying an experienced employee more in order to retain him, and stating that such practice is unrelated to gender). Finally, plaintiff presents no

evidence suggesting that defendant's gender-neutral explanation for Bortolotti's base salary is not bona fide or in good faith.

As to her claim that the compensation system which took effect on April 1, 2009 violated the Equal Pay Act, plaintiff fails to establish a prima facie case.[2] Other than asserting that the new system adversely affected her more than her co-workers, plaintiff does not explain or develop this claim. The claim seems to be based on her view that she had more experience than Wilke and thus deserved a higher base salary (although under the new plan as in 2008 she and Wilke had the same base salary). In any event, not only does plaintiff not explain how the new compensation system actually affected the salespersons in dollar and cents terms, she presents no evidence that under the new system Wilke earned more than she did. Thus, her claim fails.

Turning to plaintiff's Title VII claims, plaintiff first alleges that defendant discriminated against her in compensation based on gender. Plaintiff bases her pay discrimination claim on the same grounds as her Equal Pay Act Claim. Plaintiff seeks to prove this claim through the indirect burden-shifting method articulated in <u>McDonell-Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Under this approach, plaintiff must first establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) other similarly situated employees who were not members of the protected class were treated more favorably. See <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142 (2000). If plaintiff establishes a

---

[2]Even if plaintiff could prevail on this claim, because she was terminated on April 6, 2009 her damages would be minimal if not non-existent.

prima facie case, a presumption of discrimination arises and the burden of production then shifts to defendant to provide a legitimate, non-discriminatory reason for the adverse employment action. Id. at 142-43. If defendant provides such a reason, the presumption falls away and plaintiff must show that defendant's proffered reason is dishonest and that the true reason was defendant's discriminatory intent. Faas v. Sears, Roebuck & Co., 532 F.3d 633, 642 (7th Cir. 2008). If defendant honestly believed that its stated reason for the adverse action is true, then there is no pretext. Id.

Plaintiff's Title VII pay discrimination claim fails for the same reasons as her Equal Pay Act claim. Even assuming that plaintiff establishes a prima facie case based on Bortolotti's higher base salary, her claim fails because defendant presents a legitimate nondiscriminatory reason for Bortolotti's compensation, namely his managerial experience. See Fallon, 882 F.2d at 1213 (stating that a successful affirmative defense to an Equal Pay Act claim likewise serves as a valid defense to a Title VII claim). And as to plaintiff's claim that the new compensation system was discriminatory, as discussed, plaintiff fails to present any explanation or evidence as to how this was so. The new system simply maintained the same base salaries that she and Wilke received in 2008. And in response to her complaint about the new system, defendant pointed out that it could not pay her more because of its serious economic difficulties. Plaintiff presents no evidence suggesting that defendant's managers did not honestly believe this explanation and actually intended to pay her less because she was female.

Plaintiff also contends that defendant discriminated against her by terminating her employment in the April 2009 RIF. Plaintiff has no direct evidence that she was terminated based on gender and thus proceeds under the indirect method. To establish a prima facie

case in the RIF context, plaintiff must establish that: (1) she is a member of a protected class; (2) she was meeting defendant's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) her duties were absorbed by employees not in her protected class. Petts v. Rockledge Furniture LLC, 534 F.3d 715, 725 (7th Cir. 2008) (citing Merillat, 470 F.3d at 690). Once again, if plaintiff establishes a prima facie case, defendant must come forward with a legitimate gender neutral explanation for its action and, if it does, plaintiff can only prevail by showing that defendant's explanation is pretextual. Defendant disputes that plaintiff was meeting its legitimate expectations. However, because this issue overlaps with defendant's explanation for including plaintiff in the RIF, I will assume that plaintiff establishes a prima facie case and analyze the issue under the question of pretext. See Hague v. Thompson Distrib. Co., 436 F.3d 816, 823 (7th Cir. 2006).

Defendant contends that the April 2009 RIF was necessary due to its economic difficulties, that a significant decrease in online sales revenue rendered the automotive department unable to support three online account executives, and that it selected plaintiff for the RIF because of her comparatively poor customer service record. Specifically, defendant states that in November 2008, Herum directed plaintiff to provide credit to International Auto, a large client, but she failed to do so. Two of International Auto's online ads failed to run causing plaintiff to receive a larger commission because her delay in correcting International Auto's bill made her sales totals higher than they otherwise would have been. Herum considered this to be unethical. Second, plaintiff delayed sending documentation of International Auto's advertisements to two car manufacturers costing International Auto over $3,000 in reimbursements. International Auto's ad agency

7

complained, and defendant had to issue it additional credit. Third, another large client, Wilde Automotive, asked that plaintiff be removed from its account because of her failure to follow through, inattention to detail and poor service.[3] Fourth, after supervising plaintiff for four months, Kuether concluded that she was insufficiently cooperative with print account executives.

Thus, for her claim to survive, plaintiff must produce evidence enabling a rational juror to find that the above reasons are pretextual. Plaintiff can do this by showing either that defendant was likely motivated by a discriminatory reason or that its explanation is unworthy of credence. Senske v. Sybase, Inc., 588 F.3d 501, 507 (7th Cir. 2009). The relevant inquiry is whether defendant "honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless." Merillat, 470 F.3d at 693.

Plaintiff, first, contends that the RIF itself was a pretext for discrimination because shortly after terminating plaintiff defendant sought to hire an online account executive in a different department. However, it is undisputed that defendant faced difficult economic circumstances, lost a major source of online advertising revenue, and terminated some 350 employees. Thus, no reasonable juror could infer that the RIF was a pretext. Plaintiff also claims that defendant did not have to eliminate one of the automotive online account executives in the RIF. However, I inquire only whether defendant provides an honest explanation of its action. I do not sit as a "super-personnel department" and evaluate

---

[3] Contrary to plaintiff's assertion, the complaints of Wilde's representative are not inadmissible hearsay because defendant submits them not for their truth but for their effect on Herum.

defendant's business decisions. <u>Dale v. Chicago Tribune Co.</u>, 797 F.2d 458, 464 (7th Cir. 1986). Plaintiff points to no evidence suggesting that plaintiff's supervisors did not genuinely believe that the automotive department could no longer support three online account executives.

Plaintiff also argues that at the time of her termination, defendant cited only economic reasons and thus its argument that her performance was deficient is not worthy of credence. However, defendant has not changed its explanation that economic reasons caused the RIF in which she was terminated but merely explains why Herum selected her for the RIF. Plaintiff also claims that the stated performance deficiencies were insufficient to warrant termination because she or others did similar things for which they were never reprimanded. However, this argument misses the mark because plaintiff was not terminated simply for performance reasons but rather as part of the RIF. See <u>Fairchild v. Forma Scientific, Inc.</u>, 147 F.3d 567, 573 (7th Cir. 1998) (stating that even where an employee's performance is sufficient to maintain employment in good economic times, "in a reduction in force, someone has to go").

Plaintiff also contends that defendant's reasons for including her in the RIF are pretextual. First, she argues that she had more experience than her co-workers and that her performance was superior to their's. However, it is the decisionmaker's assessment and not plaintiff's that matters. And the sales figures that defendant reviewed, which covered the first quarter Carsoup conversion, showed only that plaintiff, Bortolotti and Wilke had comparable sales. Further, even assuming that plaintiff was a superior salesperson, I cannot weigh the wisdom of Herum's decision, only the genuineness of her

belief. And there is simply no basis in the evidence from which a reasonable juror could infer that Herum lied about her reasons for terminating plaintiff.

Plaintiff points out that Wilke also failed to timely process credit in 2008 and was removed from an account, arguing that this shows that defendant did not actually use these problems as criteria for including her in the RIF. However, these facts are insufficient to raise an inference of pretext because there is no evidence that Wilke failed to provide credit to a large client after being directed to do so by a superior. Further, whereas defendant removed plaintiff from the Wilde Automotive account after complaints of poor customer service, there is no evidence that customers complained about Wilke. Further, there is no evidence that Wilke was uncooperative or that he had a record of poor customer service.

Plaintiff also denies that she was uncooperative with print account executives, claims that everyone had difficulty working with Wilde Automotive, and contends that there is no evidence supporting plaintiff's statement that she failed to respond to International Automotive's requests for credit or reimbursement documentation. However, plaintiff cannot dispute that Herum directed her to apply credit for the two ads that did not run, that International Automotive's advertising agency complained about her failure to forward requested reimbursement documentation, or that Kuether believed that she was insufficiently cooperative with print account executives. Even assuming that defendant mistakenly believed that plaintiff was deficient in these areas, plaintiff presents no evidence from which a reasonable juror could infer that Herum did not honestly believe that she failed to apply credit despite being asked to do so, caused a large client to complain about

credit, had to be removed from another large account after the client complained of customer service issues, or was uncooperative.

Lastly, plaintiff alleges that defendants violated Title VII by firing her in retaliation for complaining about unequal pay. See 42 U.S.C. § 2000e-3(a). Plaintiff seeks to prove her case through the direct method, under which she must show: (1) a statutorily protected activity, (2) a materially adverse action taken by the employer, and (3) a causal connection between the two. Gates v. Caterpillar, Inc., 513 F.3d 680, 686 (7th Cir.2008). Plaintiff can establish a causal connection by showing that the protected conduct was a substantial or motivating factor in the employer's decision. Culver v. Gorman & Co., 416 F.3d 540, 545 (7th Cir. 2005).

Plaintiff's claim fails because she cannot show a casual connection between her termination and her complaints about unequal pay. Plaintiff principally relies on suspicious timing, pointing out that she was fired four days after complaining to a human resources representative and within a few weeks after raising the issue with her supervisors. However, no inference of causation can be drawn from this timing because Herum put plaintiff on the forty-person RIF list on March 2, 2009, before plaintiff complained about the new compensation structure. See Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004) (stating that there is no retaliation where the decision maker is unaware of the complaints). While the list was subject to change as late as March 16, plaintiff fails to show that she complained before March 16. Plaintiff asserts that she went to her supervisors with her concerns "sometime in March" or in "late March" but this is insufficient to show that she complained before the RIF list became final. Further, even if plaintiff could show that Herum was aware of her complaints sometime prior to including her in the RIF, temporal

proximity alone will not suffice to create a triable issue. Amrhein v. Health Care Serv. Corp., 546 F.3d 854, 859 (7th Cir. 2008). As discussed, defendant explained the reasons that plaintiff was already on the brink of being discharged as part of the RIF, and plaintiff has not presented any other evidence from which retaliatory animus could be inferred. An "eleventh-hour declaration" of gender discrimination cannot save an employee from a RIF. See Buie v. Quad/Graphics, Inc., 366 F.3d 496, 506-507 (7th Cir. 2004).

### III. CONCLUSION

Thus for the reasons stated,

**IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

Dated at Milwaukee, Wisconsin this 20th day of June 2011.

/s_____
LYNN ADELMAN
District Judge